ORIGINAL

Approved: *Samuel R. Raymond* MAG 8362
SAMUEL L. RAYMOND
Assistant United States Attorney

Before: HENRY PITMAN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA        :    SEALED COMPLAINT
                                :
    - v. -                      :    Violation of 18 U.S.C.
                                :    §§ 1028A, 641, and 2
CYNTHIA BARIMAH,                :
    a/k/a "Courtney Ayisi-Boahene," :
                                :    COUNTY OF OFFENSE:
        Defendant.              :    BRONX
                                :
- - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        MICHAEL SCHON, being duly sworn, deposes and says that
he is a Special Agent with the Department of State, Diplomatic
Security Service, and charges as follows:

COUNT ONE

(Theft of Government Property)

        1.    From at least on or about October 11, 2007
through at least on or about October 12, 2017, in the Southern
District of New York and elsewhere, CYNTHIA BARIMAH, a/k/a
"Courtney Ayisi-Boahene," the defendant, did knowingly embezzle,
steal, purloin, and knowingly convert to her use and the use of
another, vouchers, money, and things of value of the United
States and a department and agency thereof, to wit, the United
States Departments of Agriculture and Health and Human Services,
which exceeded the sum of $1,000, and did receive, conceal, and
retain the same with intent to convert it to his own gain,
knowing it to have been embezzled, stolen, purloined and
converted, to wit, BARIMAH possessed and used for her own
benefit Medicaid and Supplemental Nutrition Assistance Program

benefits to which she was not entitled because she was not and
is not lawfully present in the United States.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT TWO

### (Aggravated Identity Theft)

2.    From at least on or about November 28, 1995 until
at least on or about October 12, 2017, in the Southern District
of New York and elsewhere, CYNTHIA BARIMAH, a/k/a "Courtney
Ayisi-Boahene," the defendant, knowingly did transfer, possess,
and use, without lawful authority, a means of identification of
another person, during and in relation to a felony violation
enumerated in Title 18, United States Code, Section 1028A(c), to
wit, BARIMAH possessed and used the personal identification
information of another person in connection with her false and
willful representations of herself as a citizen of the United
States, in violation of Title 18, United States Code, Section
911, and as described in Count One of the Complaint.

(Title 18, United States Code, Sections 1028A and 2)

The bases for my knowledge and the foregoing charge
are, in part, as follows:

3.    I am an officer with the Department of State and
I have been personally involved in the investigation of this
matter.  This affidavit is based in part upon my conversations
with law enforcement agents and others and my examination of
reports and records.  Because this affidavit is being submitted
for the limited purpose of establishing probable cause, it does
not include all the facts that I have learned during the course
of my investigation.  Where the contents of documents and the
actions, statements, and conversations of others are reported
herein, they are reported in substance and in part, except where
otherwise indicated.

4.    Based upon my review of records maintained by the
Department of State and Department of Homeland Security
regarding CYNTHIA BARIMAH, a/k/a "Courtney Ayisi-Boahene," the
defendant, I have learned, among other things, the following:

a.    On or about November 28, 1995, a woman,
later identified as BARIMAH, *see infra* ¶¶ 5c, 5e, applied for a
United States passport (the "1995 Application") in Boston,

2

Massachusetts, using the full name, date and place of birth,
Social Security Number, and parents' names, dates of birth and
birthplaces, of another woman ("Victim-1").

          b.   On or about December 22, 2005, BARIMAH used
the same personal information to apply for renewal of the
passport through the mail (the "2005 Renewal").  BARIMAH changed
the name on this passport to "Courtney Ayisi-Boahene," based on
her marriage to her spouse ("Spouse-1").  In the 2005 Renewal,
BARIMAH listed her residence as an address in the Bronx, New
York (the "Address"), and her home telephone number as a number
ending in 0338 (the "0338 Number").

          c.   I have reviewed reports that describe a
meeting on or about May 4, 2017 between Victim-1 and special
agents of the Department of State.  Victim-1 told the agents her
full name, date and place of birth, Social Security Number, and
parents' names, each of which match, in sum and substance, the
information provided by BARIMAH on the 1995 Application and 2005
Renewal.  Victim-1 also told the agents that she receives mail
addressed to "Courtney Ayisi-Boahane."

          5.   Based on my review of records maintained by the
Department of State and Department of Homeland Security, I
believe that CYNTHIA BARIMAH, a/k/a "Courtney Ayisi-Boahene,"
the defendant, is in fact a Ghanaian national.  From my review
of records maintained by the Department of Homeland Security
with respect to BARIMAH ("BARIMAH's A-File") and Spouse-1
("Spouse-1's A-File"), I have learned the following, among other
things:

          a.   On or about December 6, 1993, the
Immigration and Naturalization Service ("INS") granted asylum
status to Spouse-1, formerly a Ghanaian national, based on his
well-founded fear of persecution in Ghana.

          b.   On or about July 2, 1999, BARIMAH applied to
the INS for a Permit to Reenter the United States under Section
223 of the Immigration and Nationality Act, as amended.  With
her application, she included a copy of the INS' grant of
Spouse-1's asylum status, and a Ghanaian marriage certificate,
dated October 23, 1988, between BARIMAH and Spouse-1.  On or
about November 23, 1999, INS sent BARIMAH a letter denying this
application, because under Title 8, Code of Federal Regulations,
Part 223.2, only lawful or conditional permanent residents were
eligible for such a permit.  INS stated that BARIMAH had not

3

established that she was a lawful permanent resident or conditional permanent resident.

c. Over the following years, BARIMAH submitted a number of other applications to INS. On or about January 4, 2008, BARIMAH submitted additional information to the Department of Homeland Security in support of an application to register as a permanent resident or adjust her status. In her application, which she certified under penalty of perjury, she listed her spouse as Spouse-1, gave her residence as the Address and stated she had been living at the Address since January 2005, and listed her phone number as the 0338 Number. On February 13, 2008, the Department of Homeland Security denied her application for adjustment of status because she had not been granted asylum or derivative asylum status.

d. I spoke with an immigration officer with the Department of Homeland Security who informed me that BARIMAH currently is not lawfully present in the United States.[1]

e. Among the documents in BARIMAH's A-File is a Ghanaian passport issued in her name, dated April 14, 2005, and includes a picture. I have compared the picture on this Ghanaian passport to the pictures accompanying the 1998 Application and 2005 Renewal. Based on my training and experience, I believe that there is a close resemblance between BARIMAH and the person in the 1998 and 2005 passport applications.

6. From my training and experience, and from conversations with officers of the United States Department of Agriculture ("USDA") and the New York Human Resources

---

[1] Among the documents in BARIMAH's A-File is a Memorandum of Creation of Record of Lawful Permanent Residence, stating that BARIMAH has been granted status as a lawful permanent resident, which appears to have been created in 2002 (the "Memorandum of Lawful Permanent Residence"). The immigration officer informed me that the Memorandum of Lawful Permanent Residence is a processing sheet, not a formal record according BARIMAH status as a lawful permanent resident. The immigration officer informed me that at the time, a Memorandum of Lawful Permanent Residence was automatically placed in the file for individuals who applied for adjustment of status. BARIMAH was not accorded status as a lawful permanent resident because there is no record that the Memorandum of Lawful Permanent Residence was stamped with an approval stamp with security ink.

4

Administration ("NYHRA"), I have learned the following about the USDA's administration of the Supplemental Nutrition Assistance Program ("SNAP"):

        a.    Under the SNAP program, certain pre-approved retail stores are authorized to sell eligible food items in exchange for coupons ("SNAP benefits") presented by eligible members of certain low-income households.

        b.    Immigrants who are not lawfully present are not eligible for SNAP benefits.

      7.    From my review of certain documents maintained by NYHRA and my discussions with other law enforcement agents and employees of NYHRA, I have learned the following, in substance and in part:

        a.    A person using Victim-1's name, date of birth, and Social Security Number, living at the Address, has received SNAP benefits from at least on or about October 11, 2007 through at least on or about October 12, 2017.

      8.    From my training and experience, and from conversations with an officer of the New York Human Resources Administration, I have learned the following about publicly funded health insurance plans:

        a.    Various publicly funded health insurance plans are available to low-income individuals and their children in New York state and elsewhere. These plans include, among others, Medicaid, a health insurance program for low-income adults and children.

        b.    Medicaid is largely federally-funded and administered by the states. The New York State Department of Health administers Medicaid in New York State, and the federal Department of Health and Human Services provides more than $1 billion annually to fund and/or reimburse its costs.

        c.    As with SNAP benefits, immigrants who are not lawfully present are not eligible for SNAP benefits.

      9.    From my review of certain documents maintained by NYHRA and my discussions with an officer at NYHRA, I have learned the following, in substance and in part:

a.   A person using Victim-1's name and living at the Address has received Medicaid benefits from at least in or about January 2006 through at least in or about June 2017.   The Medicaid benefits in Victim-1's name totaled approximately $45,000 over this time period.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of CYNTHIA BARIMAH, a/k/a "Courtney Ayisi-Boahene," the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

MICHAEL SCHON
Special Agent
Department of State
Diplomatic Security Service

Sworn to before me this
___th day of NOVEMBER, 2017

THE HONORABLE HENRY PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK